**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

BOBBY FORD,

                  **Plaintiff,**

v.

LATOYA HUGHES, *et al.*,

                  **Defendants.**

        Case No. 25-cv-02136-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion filed by Plaintiff Bobby Ford asking the Court to reconsider the denial of his Motion for Leave to Proceed *in forma pauperis*. (Doc. 14, 15). For the following reasons, the Motion to Reconsider is **DENIED.**

On May 6, 2026, the Court denied Plaintiff's Motion for Leave to Proceed *in forma pauperis* (IFP). (Doc. 14). Plaintiff has had three cases dismissed with prejudice for failure to state a claim, and therefore, pursuant to 28 U.S.C. §1915(g), he can no longer proceed IFP unless he is under imminent danger of serious physical injury. (*Id.* at p. 2). The Court found that Plaintiff had failed to plead facts supporting the conclusion that he was in imminent danger at the time of initiating this lawsuit. In the Complaint, which is 47 pages and includes over 100 pages of exhibits (Doc. 1, 6), Plaintiff named over 50 Defendants and alleged a variety of constitutional violations that occurred at Menard Correctional Center (Menard) from 2023 until 2025. The latest specific instance of a constitutional deprivation that Plaintiff described occurred on March 14, 2025, eight months prior to the filing of this lawsuit. (*Id.* at p. 2-3). Although Plaintiff asserted that his constitutional rights continue to be violated, the Court observed that he did not describe a

Page 1 of 5

discernable specific emergency or physical threat to his safety that he was experiencing when he filed his Complaint. He also did not request any form of injunctive relief in the Complaint or by motion. And furthermore, the Court would not consider Plaintiff's new allegations of imminent danger that he believed he faced now that he has been transferred to Pontiac Correctional Center (Pontiac). Based on these findings, Plaintiff did not qualify to proceed IFP under the imminent danger exception, and his motion was denied. Plaintiff was given until June 6, 2026, to pay the full filing fee of $405.00. (*Id.*).

Plaintiff has not paid the filing, and instead, on May 12, 2026, Plaintiff filed a motion asking the Court to reconsider the denial of his Motion to Proceed IFP. (Doc. 15). Plaintiff argues that he should be allowed to proceed under the imminent danger exception because of his untreated "prostate/colon cancer." (Doc. 15, p. 1). Plaintiff clarifies that denial of medical treatment for cancer began while he was at Menard and has continued after his transfer to Pontiac. (*Id.* at p. 5) Plaintiff recounts how in October 2024, while at Menard, he discovered blood in his stool and urine; he began losing weight and experiencing pain in his hips and lower back. (*Id.* at p. 4). Medical staff took a urine sample but would not take him to the hospital. Finally in November 2024, after laying down in his cell, unresponsive, he was taken to a hospital and diagnosed with a urinary tract infection. He claims that at the hospital "it was discovered that [he] had cancer," and he was subsequently also told by several doctors at the prison that he had cancer. (*Id.*). Following his return to Menard from the hospital, Plaintiff states that he was repeatedly scheduled to see a doctor, but the appointments were cancelled. (*Id.*). He was last scheduled to see a urologist on September 9, 2025. (*Id.* at p. 5). Plaintiff asserts that as of filing the Complaint, he has been in imminent danger of death due to ongoing denial of care for his cancer. (*Id.*). Plaintiff asks the Court to issue a preliminary injunction directing Pontiac to provide him with "cancer treatment

medication" before "it reaches fatal deadly stage four cancer." (*Id.*).

Unrelated to his assertion that he was under imminent danger from untreated cancer at the time of initiating this lawsuit, Plaintiff also asserts that on December 2, 2025, prior to his transfer to Pontiac, three security officers at Menard retaliated against him by beating him and forcing him to perform oral sex on them. (Doc. 15, p. 1). According to Plaintiff, the officers told him to withdraw the lawsuit or "die," and they called him derogatory names. (*Id.)*.

On June 3, 2026, Plaintiff filed a motion in which he alleges that in May 2026, two individuals who said they work at Menard took him from his cell at Pontiac and beat and sodomized him. (Doc. 16, p. 1-2). The individuals told him to "drop the lawsuit or die." (*Id.*). After the attack, his Dovato medication, prescribed to treat his HIV, was "cut-off." (*Id.* at p. 2). Plaintiff asks the Court to issue an injunction forcing medical staff at Pontiac to renew the Dovato prescription and ordering that he be given cancer treatment. (*Id.* at p. 16).

Under Federal Rule of Civil Procedure 54(b), the Court may revise any order adjudicating fewer than all the claims at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Motions to reconsider an order under Rule 54(b) are judged largely by the same standards as motions to alter or amend a judgment under Rule 59(e), "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

Plaintiff has failed to demonstrate error of law or fact made by the Court in denying his Motion for Leave to Proceed IFP. Neither has he presented newly discovered evidence. The facts

in the Complaint fail to state a claim or show imminent danger regarding inadequate treatment for Plaintiff's cancer diagnosis. The 47-page complaint contains only two passing statements regarding his cancer. At one point he asserts that he suffers from "ongoing excessive force, retaliations, degradations, medical denials, slander, defamation of [his] character for filing grievances, and [he] could die from the cancer untreated." (Doc. 1, p. 13). Later, he states that since November 1, 2024, he has been informed that he "may" have cancer and its spreading, but "the Defendant" will not send him out for actual testing and treatment. (*Id.* at p. 32). These allegations, however, are too ambiguous and not clearly asserted against any of the 50 named Defendants. Although Plaintiff states that "[Defendant] Wexford Inc. is the med-service provider [and] multiple times in 2 ½ years deny [him] care," (*Id.* at p. 13), this statement is not sufficient to state a claim against a corporation, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978), and Wexford was not the healthcare service provider at the time the Complaint was filed.[1] Plaintiff could not, therefore, be in imminent danger due to any conduct on the part of Wexford when he initiated this litigation. Because Plaintiff's claims regarding inadequate treatment for cancer are vague and conclusory, the Court correctly determined that he had not demonstrated imminent danger at the time of filing. *See Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003).

The Court will not consider Plaintiff's new facts or his elaborations on earlier factual assertions. As stated, "[r]econsideration is not appropriate for…arguing matters that could have been heard during the pendency of the previous motion." *Ahmed v. Aschcroft,* 388 F.3d 247, 249 (7th Cir. 2004) (quoting *Caisse Nationale de Credi Agricole,* 90 F.3d at 1270 (7th Cir. 1986)).

---

[1] As of July 30, 2025, Centurion Health became the comprehensive healthcare services provider for the Illinois Department of Correction. *See* Memorandum from Director Latoya Hughes on Update on Transition of Comprehensive Healthcare Services Provide*r* (July 24, 2025) (*https://idoc.illinois.gov/news/memos-to-population.html*).

Additionally, the allegations regarding his lack of cancer treatment at the time of filing included in Plaintiff's motion are also as unclear as the allegations in the Complaint. Plaintiff again does not attribute his lack treatment to any named Defendant and simply states, "Repeatedly Menard C.C. denied prostate/colon cancer treatment." (Doc. 15, p. 4). He states that he went to a urologist on September 9, 2025, but was "not treated." (*Id.* at p. 5). If he was seen by a urologist, it is not clear what he means by "not treated." Because Plaintiff has failed to demonstrate an error of law or fact in the Court's Order denying his Motion for Leave to Proceed IFP, the motion seeking reconsideration is **DENIED**. (Doc. 15).[2] Plaintiff shall have until **July 30, 2026,** to pay the $405.00 fee, failing which this case will be dismissed in full.

The Court further **DENIES** any request for emergency injunctive relief. Plaintiff's underlying Complaint pertains to events that occurred at Menard, and he now asserts allegations regarding inadequate medical care and mistreatment at Pontiac against individuals who are not named in this Complaint. A motion for a temporary restraining order (TRO) or preliminary injunction is not a proper avenue for Plaintiff to add claims and individuals to this lawsuit. Accordingly, because the requests for emergency injunctive relief pertaining to recent events that are outside the scope of the Complaint, the requests are denied. (Doc. 15, 16).

**IT IS SO ORDERED.**

**DATED: July 16, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**

---

[2] The Court notes that on April 7, 2026, Plaintiff filed a lawsuit that suffers from the same issues as his Complaint in this case. *Ford v. Hughes,* No. 26-cv-00451-DWD (S.D. Ill.). The Amended Complaint describes a variety of constitutional violations that have occurred since 2023, and Judge Dugan found that Plaintiff had not established that he was in imminent danger at the time of filing. (*Id.* at Doc. 9).